The last case up this morning is Streikus v. Kilolo Kijakazi, 22-2484. The court is adjourned. Mr. Forbes, whenever you're ready. We can now say good afternoon. Good afternoon. I was wondering if I was supposed to bring lunch. May it please the court, my name is Randall Forbes, I represent the Disability Claimant. And this case is a case that is in the line of cases that Yert and Crump were in. We're revisiting the issue, which has been revisited many times. I partly at fault since many of those cases are my cases. I think the ALJ's justification of the moderate gradation, I think the ALJ stuck with the reasoning that the ALJ used. And also, the ALJ is stuck with the residual functional capacity finding that the ALJ found. The reasoning in the moderate gradation analysis in the B criteria is flawed in several respects. One is that the concept of good intellect is used to demonstrate ability or inability to concentrate or have taste problems. Good intellect is not proper analysis, is not found. One can have any cognitive level on a spectrum and either not be able to concentrate or concentrate depending on the other factors. So that's irrelevant. The use of care for children is just improperly used. It's in violation of the Beardsley Doctrine. The exhibit that the ALJ points to is 5E. Wasn't that information used to determine whether or not the information or the mental impairments qualified or medically equal to listing? Yes, that's where the B criteria is first. But the B criteria gradations are translated then into limitations in the residual functional capacity, and they have to be consistent. My question, let me redirect you to my question though, did the ALJ use that determination that the claimant had the ability to care for the children? In the RFC? Not specifically what the ALJ did, and is it alright if I use the RFC, there's a couple judges that don't let me. We're okay with that. Thank you. The part of the RFC that covers concentration, I believe, is where they say able to work in two hour increments. But that's not a limitation, that's just a job requirement of skilled work, and my point is, the reason that YERT is violated, and that this needs to be remanded, is that there is no concentration limitation in this residual functional capacity finding. So how could you say that, given the two hour limitation that is specifically in there? Because that is the job requirement of skilled work, you've got to concentrate that long to make it between breaks. Why can't the ALJ's concentration limit be the same as the minimal expectation for unskilled work? I haven't seen any authority to support that. Or the opposite authority. It's a, that's what unskilled work requires, and if a person can do that, they are not limited in concentration, persistence, and pace. That's the point I'm trying to make. It's a non-limitation, and when you treat it as a non-limitation, then that RFC reads almost precisely like YERT. YERT could have put that in, put that requirement in the RFC, it wouldn't have changed a thing. So what... What limitation do you think the ALJ should have included? You haven't proposed one. Well, I think the ALJ has to have a proper, the ALJ... What limitation do you think she should have included in the RFC? Probably some form of limitation that had to do with the ability to perform on task. But what specific limitation and what medical evidence supports that? You haven't given us one. All I know is that mild is slightly limited, marked is seriously limited, and moderate is limited on a spectrum in between. The ALJ says moderate. That means that there has to be a limiting limitation, and there is no limiting limitation, just a restatement of what is required in skilled work. And if I'm unable to do any more specifically than that, it's because I didn't, I was not the administrative attorney in this case. What I can tell you is that the two cases in this area that are Yert and Crump, and I did both those cases, not... At this level, and this case falls in those cases. There will have been no validity to Yert if all an ALJ can say is, can work in two-hour increments, because that's a non-limitation in relation to concentration. Didn't the ALJ also incorporate the limitations provided by the state agency psychologist? All that, all the state agency psychologist did was state the requirement for unskilled work. A task, a complete task, I can't remember the exact language, when I come back up, I'll have that. But... You are in your rebuttal time. Mr. Korbs, if you want to save any. All right, thank you. I leave it to you, but if you want to save any. Just one other point, and that is that if moderate, just based on the mental health impairment, is somewhere between mildly limited and seriously limited, then when you add the concentration impact of the headaches in this case, that you move that gradation even further towards seriously limited. So there needed to be something in the RFC. Thank you. Thank you, Mr. Korbs. Mr. Hensley? Good afternoon. Good afternoon. May it please the Court, I'm Jay Hensley, representing the appellee in this case. Your Honors, with all respect, Mr. Strykos' biggest hurdle in this case involves his inability to answer a basic question, as posed by Judge St. Eve. What evidence suggests greater limitations than those which were incorporated by the administrative law judge? Mr. Strykos is unable to direct this Court's attention to any specific evidence that would warrant greater mental limitations than those adopted by the ALJ in her residual functional capacity determination. In his brief, Mr. Strykos only generally refers to his extensive mental health history, but at no point does Mr. Strykos provide specific evidentiary references establishing deficits in concentration, persistence, or pace, and if I may indulge the Court, I may say CPP. As the ALJ properly determined, the evidence as a whole suggests otherwise. Turning to Yert and Crum, the claimants in those two cases are vastly different from the situation presented here. Mr. Strykos presented no evidence, again, of persistent or frequent concentration difficulties. In Yert, the claimant experienced, among other things, auditory hallucinations and bouts of uncontrollable rage. In other words, there were extreme temperamental deficiencies with Yert. Ms. Crump had a psychosis. She had an attention impairment, and she was hospitalized and medicated involuntarily for mental health symptoms for three weeks, and she was noted that she would be off-task 20% of the time. Here, Mr. Strykos was not diagnosed with psychosis. He was not observed to have impaired attention in a healthcare provider's treatment notes, and importantly, he was not hospitalized for mental health symptoms, let alone for three weeks. Given the limited evidence of Mr. Strykos' difficulties with concentration, persistence, or pace, the ALJ acted appropriately in limiting him to performing simple routine tasks with simple work-related decisions. In accordance with VSTIC, we ask that this court recognize the deference that an ALJ should receive who is actually at the hearing and personally observe the claimant and heard the testimony. This court is asked whether the ALJ's phrasing, quote, specifically excludes those tasks that someone with the claimant's limitations would be unable to perform. We submit that in the absence of evidence that Mr. Strykos had additional limitations that the ALJ failed to incorporate, we submit that this court should find that the ALJ's RFC determination and corresponding hypothetical to the vocational expert were fully appropriate to the record. Are you aware of anything that would preclude the ALJ from using the two-hour minimum expectation of concentration for unskilled work as a limitation in the RFC? No, not at all. This is what was found to be supported by the evidence, both by the state agency and by the administrative law judge. If the record is, if that's what the record supports, then that is what the ALJ found. In the absence of evidence disputing that, we find that to be a fully appropriate non-exertional limitation in this case. Just a few words on the, what fair functioning means. Fair functioning is, we're looking at fair functioning on a sustained basis. It's a reflection of a rating in the B criteria at steps two and three, and it's nothing more than that. There are no magic words that are required to accommodate a moderate concentration, persistence, or pace rating. Instead, of course, an ALJ has to look at the evidence in each particular case. Even seemingly generic limitations such as limiting a claimant to simple routine work or work-related decisions have been found repeatedly by this court to properly account for a moderate rating in concentration, persistence, or pace so long as they adequately account for the claimant's demonstrated psychological symptoms found in the record. I point to the cases that we cited in our brief, most recently Pavlicek, also Kuykendall, Josephick, Saunders, Pitluski, Urbanik, and there are others. In this case, the ALJ's RFC determination sufficiently addressed how Mr. Strykos' moderate rating in concentration, persistence, and pace affected his ability to stay on task, and the evidentiary record simply did not warrant limitations beyond those contained in the hypothetical and the RFC. With little to no actual evidence of limitations, Mr. Strykos is asking this court to improperly re-weigh the record. What about the headaches? Was that raised below? It was not raised in the district court. It is raised in the brief to this court. We would argue that's waived, but at the same time, we submit to you that the ALJ did address the headaches, found it to be a severe impairment at step two, addressed it in the RFC determination, and accommodated it with a moderate level of noise. Also the claimant's allegations that the headaches caused him to lie down in a dark room, that wasn't borne out by the record. We would submit to the court that if that were the case, if it were to the part where Mr. Strykos literally had to lie down every day in a dark room, he would have said something to this effect to his treatment providers. It's not documented in the treatment notes. No allegation like that is borne out by the record. The ALJ fully considered it, and as I mentioned, did incorporate the headache limitations that were supported by the record. So, with that, we would ask the court to uphold the ALJ's determination, because it is supported by substantial evidence. Unless the court has any questions, I'd be happy to answer, otherwise, I thank you very much for your time today. Thank you. Mr. Forbes. Tenery requires that the ALJ's reasoning be the reasoning that she stuck, that the ALJ stuck with, and the reasoning is contained in the B criteria. It is nonsensical, and it's further nonsensical to say, one, there's a spectrum of limitation, but in relation to concentration, persistence, and pace, but when it comes to what is put in the RFC, that is a job requirement, that is not a limitation, and I understand that my whole argument rests on that, and if you disagree with me, well, it'll go somewhere else, I understand that. This case is like yurt, and if you look at the descriptions of this person's life, how they struggle in the mental health records, from the testimony, and from the objective facts, auto accident, beaten in the head by a ball bat, beaten again, this record reads an awful lot like many records do where people suffer traumatic brain injury. The subjective reports aren't always consistent, and it's because the person with traumatic brain injury doesn't possess the ability to describe things consistently. So, thank you very much, I appreciate it. Thank you. The case will be taken under advisement. That concludes our oral argument for this morning, and the court will stand in recess.